Good morning, Your Honors. May it please the Court, my name is Anna Darbinian of Asherson Klein Darbinian. Together with my partner Neville Asherson, who is seated at the table, we represent Petitioner Maurizio Crippa in these consolidated proceedings. They're actually, I don't, I'm not sure they're formally consolidated, but so we hear separate arguments in the two. Well, the first issue at hand is, in summary, the cases that are before you have to do with Mr. Crippa attempting to adjust status to that of a U.S., to that of a permanent resident by virtue of marriage to a U.S. citizen. Let me, let me ask you some questions, if I may, about specifically the Holder case, which is the one we're on now. And as I understand it, there are two separate orders that are on review in this case. And one of them is the notice of decision on the denial by USCIS. It's an order denying adjustment of status. And on that, I would like to know from you why that is an appealable or reviewable matter in two respects. First, the order itself says it is not appealable and that it is without prejudice to reopening. So I don't see that it's final. And the other issue is that the adjustment of status decision therein is discretionary. So if you would address why that is a reviewable order, I would appreciate it. Absolutely, Your Honor. Well, if I may just go backwards with the second request, why, as the adjustment of status is discretionary, the entire proceedings in these cases, Judge Graber, is that the government seems to shield itself under the disguise of discretion without really respecting what Congress's intent has been, which is that individuals like Mr. Creeper, who enter on a visa waiver program, are part of what would be considered a favored class as being that of a spouse of a U.S. citizen as an immediate relative. But that's no guarantee of adjustment of status. Well, it certainly presents, you know, if the issue is that you've overstayed on a visa waiver program and that you've worked illegally, which Congress explicitly exempts these individuals for purposes of adjustment of status, if the U.S. immigration can just, under disguise of discretion, completely ignore what Congress's command is, then everything could be under the disguise of exercise of discretion and there would be no transparency. Would you also address the finality problem with that order? The finality problem with regard to the adjustment of status? With the USCIS order, which says that it's without prejudice to renewal and that it's not appealable, it seems non-final. Well, I think that in that case, Your Honor, I'd like to bring the case of the Morales Izquierdo, which the court has requested that we, you know, brief on the issue and we've actually presented valid arguments, in that the adjustment of status is inextricably linked to the removal order. In fact, there's a memo that the USCIS has issued that explicitly instructs USCIS officials to regard ICE's decision of a removal order under Section 217 as a negative factor and to, under the exercise of discretion, to deny those cases without having any merit. Let me see if I understand where we are. This is the Holder case that we're on now, correct? Correct. And my understanding is that your client, when he entered pursuant to visa waiver, he signed a form which told him that he was waiving the right to contest removal if he overstayed. Correct? That's correct, Your Honor. However, in the... Oh, it's finished. Okay, excuse me. But that's correct, right? In essence, yes, Your Honor. And under the regulations and law, there are some exceptions to that, including if you file a timely request for adjustment of status under certain conditions. But this one was not timely. It was filed after the 90 days expired, correct? That's correct, Your Honor. However, the Momeni case, if that's what you're referring to, Your Honor, has not been upheld or does not have any authority with the U.S. immigration. In fact, they've explicitly stated that they will not be following the Momeni case. You have to. We're bound by it. Well, I understand that, but, you know, if we could look at the Momeni case. There was a rule that denied that they were... You know, people exercise prosecutorial discretion all the time. They choose not to prosecute case A, but they do prosecute case B. And when case B comes before us, as our presiding judge just indicated, we have to follow the law. I understand that, Your Honor. However, I think prior to Momeni, there was the Freeman case, which is a precedent case. And in that case, I don't think that that was the main argument, that it has to be within the 90 days. And in addition, I also want to point out to the Honorable Court that this has been actually repudiated by the Attorney General and the Bradley v. Holder with the Supreme Court. So the fact that, you know, to impose the 90-day regulation, which is not being reviewed by the U.S. Immigration or is not taken into consideration, I think also violates my client's equal protection argument because then he's singled out. May I go back and ask you a question? Because I'm still processing what you just said. Is it your position that did Bradley v. Holder post-date our Momeni decision? Is it later than 2008? I believe it did, Your Honor. And is it your position that it essentially overrules Momeni on the 90-day question? I believe that if the Attorney General repudiates. No, I'm asking if the U.S. Supreme Court decision which you mentioned is inconsistent with our decision in Momeni because that is potentially one reason why we might not follow the earlier case. Yes, Your Honor. If it is no longer valid under a U.S. Supreme Court decision, that's why I'm asking the question. Yes, Your Honor. I would take that position, Your Honor. And what are our other questions? In addition, I think your second argument, Judge Hawkins. This is a question. Excuse me, the question. I apologize. Your second question. You get to argue. I just get to ask questions. I will happily argue, Your Honor. And you're doing just fine. Thank you. And the second issue, I think, your second question, if you can just remind me what that was. Was it having to do with. Well, the first is he signed the waiver. Okay. Thank you. No contestation available of removal. Right. And then under the applicable law, he files an untimely request for adjustment of status based on an I-130. Okay. So if I could just basically look at the jurisdiction with regard to the removal order itself. So if the removal order was, if Congress explicitly has allowed judicial review in cases of all removal orders that are final except expedited removal. So it was congressional intent to explicitly not include the visa waiver entrance as under that removal order context. So therefore, for the government to come back and say that there's the no contest clause, number one, they are under regulation under section 217 required to follow the regulation as to the validity of this removal order. Number one, they've included a, at the time of execution of this removal order, they did not have a signed or any document that reflects that he entered on a visa waiver. This was attached in our opening brief, which explicitly stated that the only document that they had was a blank I-94 form, which is an arrival departure card. So at the time the director actually issued the order, which is in question, which I'd like to have a moment to explain, they did not have an actual signed document. You're talking about which order now? I'm talking about the final order of removal. Absolutely, Your Honor. It's the order under section 217, administratively removing my client under the visa waiver program, which Director Robbins, Tim Robbins, had signed. The second issue is that this document, which miraculously appeared in the certified admin record later filed with the court, is in Spanish. The government is basically disrespecting the regulation which says any document in the United States, as far as I'm aware, needs to be in the English language. So if the government is going to present evidence that the document that my client signed, which is a Spanish document, not an English document, that my client knowingly and voluntarily basically waived all his rights and that therefore he cannot contest it, I don't think is applicable. And under the Morales-Esquerdo matter, under the zipper clause, I think that issue is explicitly addressed as well. I'd like to ask just a hypothetical question. Sure. What would your position be if the director had in his or her possession the visa waiver at the time the decision was made? Is that already the outcome? In that hypothetical, Judge Sedgwick, I would take the position that the only document that exists in fact is a Spanish document. So unless Mr. Robbins will come and testify that, A, he understands the Spanish language or that my client understands the Spanish language, I would find that very hard to understand how a decision would be rendered on that basis. If there were a document that was in a language that we clearly knew your client understood, would that change the outcome? It may. However, I'd like to preserve the argument of the consumer rights theory under the Supreme Court decision that which I will cite to you if you like, which states that consumers cannot just knowingly and voluntarily waive all rights, you know. If they want to get in, they have to. I understand that that's the position, Your Honor. However, if Congress. This is the iron curtain. I understand that. If you sign, you get in. If you don't sign, you don't get in. That's true. However, if Congress explicitly excludes. So what does it matter if he understood it? It could have been in Swahili. Well, there's an exception to immediate relatives, which is really the core of this issue. He is married to a U.S. citizen. That's a heightened class of. That occurred after he got here, didn't it? That did. But I think that. Not after he got here, right? I would say about three years, three and a half years later, Your Honor, yes. However, I think that if Congress explicitly excludes the provision that expedited removal orders are the only class of removal orders that is not reviewable, then I think it was congressional command that these orders are not per se, you know, the applicant does not waive his or her right to contest it. Thank you, Counsel. You've exceeded your time, but we'll give you a minute for rebuttal. Thank you, Your Honor. That's a lot of questions. Thank you, Your Honor. May it please the Court, Dan Shan on behalf of the United States Government. We have just two points we want to make this morning. Can I ask one quick question that I'm sorry I don't have right at hand, and that is the I-130 denial was merits-based or based on timing? The I-130, I believe, was granted, Your Honor. Oh, it was granted. In other words, the USCIS determined that this was a valid marriage, not entered into for fraud? That's what I understand, Your Honor. If he loses these cases before us today, hypothetically, if he loses them, can he return to Italy and wait a period of time and then reapply for I-130? Yes, Your Honor. What's the waiting period? I believe it's a 10-year bar. All right. Go ahead. So, Your Honor, the two primary points we wish to make this morning is, one, the removal order itself is valid, and, second, that the Court lapsed jurisdiction to review the adjustment claim. So, first, the removal order is valid simply because the waiver is valid. As you pointed out, the I-940 is in Spanish, but the very first line of the I-94 says it's an I-94, and it should be noted that it was on his flight back from Mexico that he was handed this form in Spanish. And in the form, it contains all of his information. So it's got not only his name, but it's got his nationality, his passport, the airline, his address. I mean, everything is filled out. And then he signs it. And then nowhere in his opening brief does he ever say that he doesn't understand Spanish. So the Petitioner's Counsel argues that there's a rule that any form that anyone signs in this country has to be in English. I don't know of such a rule. In fact, I think these I-94s are translated into other languages specifically to help make sure that the person signing it understands what they're signing. Well, it's interesting because he does actually answer every question, too. Yes, Your Honor. And, you know, I think to the extent there is some factual dispute, I think we have to use the record before. This is what Congress intended with these VWP cases. They're meant to be expedited and kind of funneled through the circuit courts. And so there's a reason why Congress never intended there to be full discovery in these cases. And so what we have is what we have. And in this case, it seems pretty clear that he understood the form. And he doesn't argue that he doesn't understand the form. He simply argues that there's some responsibility of the United States government to provide everything in English, which is simply not true. And just briefly to touch on this, the validity of the VWP has already been upheld in Bingham by this Court. And very simply, Bingham held that the VWP program is constitutional because the condition is rationally related to the benefit, and the condition being that you have to accept expedited removal, but what you get is expedited entry. So the benefit the petitioner got in this case was that he was able to enter the country. He never had to apply for a visa. But the condition of his stay under this program is that he also had to leave in a timely fashion, which not only did he not do, but he waited until he was in detention. And then in detention, Judge, to answer your question, he was married three years ago while he was in detention. Can I ask you specifically your position with respect to the argument that the U.S. Supreme Court decision in Bradley overruled or is fatally inconsistent with our decision in Momaney? Yes, Your Honor. I don't believe there is a Supreme Court decision in Bradley. What the petitioner cites, too, is a cert op. It's the Solicitor General's position. Bradley was a Third Circuit decision, and the Attorney General took the position in that case, or the Solicitor General, in opposing the motion for cert, the writ for cert, was that these adjustment applications do get adjudicated by SIS. So there is no Supreme Court decision. So Momaney is good law? Absolutely, Your Honor. For us. It may not be right, but it's valid, and we have to follow it. Absolutely, Your Honor. To briefly touch on the issue of whether this case should be in this court or in district court on the adjustment claim, Your Honor, I just wanted to, because you asked that earlier. Under Morales v. Ghiardo, this court called that a very narrow exception, but when the Zipper Clause under 1252b-9 applies to ZIP adjustment applications up with final orders of removal. I have to say, I didn't really understand even the relevance of that decision in view of the fact that the notice of decision is not a final order. Yes, Your Honor. So would it even apply to something that's not a final order? Your Honor, no. That's the first argument we make in our brief. SIS's decision is not a final order of removal. But secondarily, the Zipper Clause wouldn't apply to ZIP the adjustment application in what the VWP claimed, primarily because even in Morales v. Ghiardo, the court recognized that, for the most part, adjustment applications don't ZIP. And the reason why is because somebody can be here lawfully, and he can be here for a long time, and he can apply for adjustment, and the adjustment application can get denied, and he can still be in legal status. So you think of somebody here on a student visa or someone here on an extended tourist visa, they can try to adjust status through whatever means, and it can get denied, and there's no final order of removal. And so in most cases, it doesn't make sense to ZIP adjustment because then you'll never get review. But there it was the reinstatement of a final order, and the holding was that when you reinstate a final order, it's still final. Right. And the reason why it ties to adjustment is because the statute itself says if you apply for adjustment and a reinstatement order is issued against you, in the statute, adjustment is automatically denied. We don't have that with VWP. It's much more of a separate track. Sometimes, like in some cases, they could parallel each other, but it's not nearly the way. It's kind of one-for-one in reinstatement cases. So the tie is definitely not as strong. And so I think the language used by the court in Morales v. Sciarra was they must be inextricably linked, and in VWP and adjustment claims, they're simply not inextricably linked. And just briefly to touch on the question of the denial itself. Your Honors, discretion is a decision to give or not give a benefit based on an adjudicator's determination of a composite sketch of an individual. So do we look at all the facts of an individual and determine does this person merit a positive benefit that we want to confer on this person? And in this case, this is clearly a discretionary decision. So the petitioner spends a lot of time arguing that, well, none of these individual factors that USCIS relied upon are per se bars to adjustment. And that may be true, but that's not what SIS held. SIS looked at all these different factors, working with the authorization, overstaying as VWP, to arrest for driving under the influence and said, this man doesn't respect our laws. And so given our discretion, we're going to deny this positive benefit to become a citizen of our country. And that's a discretionary determination in this court-like jurisdictional review. There's nothing legal or constitutional about that finding. And so if Your Honors have no further questions, we would ask that the court deny the petition for review. Thank you. I don't believe we do. Mr. O'Brien, you have one minute for rebuttal. Okay. Thank you, Your Honor. I'll be very fast. First, to clarify, the I-130 is, in fact, granted. So the marriage petition is granted. The prejudice to my client is a 10-year bar that he would be away from his U.S. citizen wife. The most important issue that I'd like to also present, because I forgot to mention that I had confirmed whether or not you have received and reviewed my 28-J letter that I filed. We received it. You did. Yes. Okay. So the issue here is that my client was basically denied the ability to get married, which would have preemptively removed this removal order entirely. And the fact that the USCIS denied my client the ability to marry, even though they were aware of the underlying fact that he had a U.S. citizen fiancee, I think is really one of the other violations, the regulatory violations that we've presented in our briefs. And I'd like to point that out with the presentation of my 28-J letter, which explicitly states that he was basically not free from detention. We understand your position. And I think I'd like to argue some more, but I'm out of time. So thank you very much, Your Honor. Thank you. The case just argued is submitted, and we appreciate your arguments.
judges: Sedwick, Hawkins, Graber